IN THE UNITED STATES DISTRICT COURT
FOR TH SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

BRANDON MARKER,

      Movant,

v.                                Case No. 2:04-cv-01161
                                     Case No. 2:02-cr-00084-01

UNITED STATES OF AMERICA,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending is Movant Brandon Marker's (hereinafter "Defendant") Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (docket sheet document # 119). This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 17, 2002, a young man named Nicholas Headden was kidnapped at gun point from a mobile home in Jacksonville, North Carolina by two men, who were later identified as Defendant and Cory Feres. Headden and his brother allegedly owed Defendant money from a prior drug deal involving 200 pounds of marijuana. Defendant was affiliated with a drug distribution ring that had been led by Jason Norris.

Defendant and Feres drove Headden to another friend's house where Headden retrieved $10,000 and a 45 caliber gun from a safe, both of which were taken by Defendant and Feres.  Headden still owed more money and stated that Defendant and Feres said they would not let him go until the money had been paid.  Defendant then directed Headden to contact his brother's girlfriend, Kelly Gust, in Michigan, to get her to pay the money.

Defendant and Feres apparently planned to drive Headden to Michigan to get the money.  Headden subsequently told Defendant and Feres that they would meet Gust in Charleston, West Virginia, because it was about half way for each of them.  Unbeknownst to Defendant and Feres, Gust told Headden that she would call the police.

Federal and local law enforcement officials in Charleston, West Virginia were notified that Headden had been kidnapped and that he and his abductors were on their way to Charleston in a white Ford Explorer with Pennsylvania license plates.  FBI Special Agent Jack Remaley had telephone contact with the FBI in Wilmington, North Carolina and/or Headden's father during this period, and was apprised of their destination.

Around 3:30 or 4:00 a.m., on March 18, 2002, law enforcement was notified that Headden and his abductors were at the Fairfield Inn on Leon Sullivan Way in Charleston.  When law enforcement arrived at the hotel, the white Explorer was found in the parking

2

lot, and Feres was inside the vehicle, unarmed. Headden was outside the vehicle, having apparently just telephoned Gust from a pay phone to advise her of his location. Headden stated that Defendant was inside the hotel with drugs and guns.

Hotel management informed law enforcement that a man had just checked in and had gone to room 411. Shortly after the Charleston Police knocked and announced their identity, Defendant opened the door to the hotel room. Officers then located a black zippered bag which was laying open in the room. In plain view in the bag was the butt of a gun and what appeared to be cocaine powder. It was later determined that the bag contained nine ounces of cocaine powder and 100 tablets (weighing 14.4 grams) of Ecstacy. The officers also seized $15,000 in cash, and two firearms, one of which had an obliterated serial number.

On April 10, 2002, Defendant and Feres were indicted on one count of aiding and abetting the possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count One), and one count of knowingly using or carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1), 2 (Count Two). (# 20). Defendant was represented by retained counsel, Peter Mineo, from Fort Lauderdale, Florida, and Troy Giatras, who served as local counsel.

On July 2, 2002, Defendant pled guilty, pursuant to a written plea agreement, to both counts of the indictment. (## 58, 59). The district court ordered the Probation Department to prepare a Presentence Investigation Report ("PSR"). Defendant, by counsel, objected to the inclusion of 200 pounds of marijuana that Defendant had allegedly sold to Headden or his brother, in his relevant conduct. Defendant also objected to the recommended two-level enhancement for his role in the offense and the recommended departure from the Guideline range for involvement in a kidnapping.

At the sentencing hearing on December 18, 2002, Defendant, by counsel, pursued the three objections. The district court heard testimony from Nicholas Headden, and found him to be a credible witness. The district court overruled Defendant's objection to the attribution of the marijuana as relevant conduct, and found that 248 grams of cocaine powder and 200 pounds of marijuana were attributable to Defendant as offense and relevant conduct. Accordingly, based upon a marijuana equivalency of 147.52 kilograms, Defendant's base offense level was determined to be 26.

The district court also determined that a two-level enhancement for his role in the offense was appropriate and overruled Defendant's objection on that basis. Thus, Defendant's offense level was raised to 28. After a three-level reduction for acceptance of responsibility, Defendant's total offense level was determined to be 25.

With a criminal history category of I, Defendant's Guideline sentencing range on Count One was determined to be 57-71 months. On Count Two, Defendant faced a consecutive sentence of five years to life, but the Guideline determination was 5 years (60 months).

The district court elected not to depart from the Guideline range on the basis of the kidnapping, but sentenced Defendant to the top of the Guideline range at 71 months on Count One, to be followed by a consecutive 60 months on Count Two, for a total sentence of 131 months of imprisonment, followed by a 5-year term of supervised release. Defendant was also ordered to pay a $5,000 fine and a $200 special assessment. (# 77).

On December 27, 2002, Defendant filed a Notice of Appeal. Mr. Mineo and Mr. Giatras were thereafter allowed to withdraw as counsel, and Matthew Victor was appointed to represent Defendant on appeal. In his appeal, Defendant only challenged the application of the two-level enhancement for his role in the offense.

On July 29, 2003, the United States Court of Appeals for the Fourth Circuit affirmed Defendant's sentence and dismissed his appeal. Defendant did not seek a writ of certiorari in the United States Supreme Court. Accordingly, his judgment became final on or about October 29, 2003.

Defendant then filed the instant section 2255 motion (# 119) on October 24, 2004, just five days before the expiration of the one-year statute of limitations under 28 U.S.C. § 2244(d)(1)(A).

See Houston v. Lack, 487 U.S. 266, 276 (1988)(motion considered filed upon depositing into prison mail collection box).  That same day, Defendant filed a Motion for Leave to File an Amended Motion, stating that he wished to file an amended motion with further support of his claims within 30 days.  (# 118).  However, Defendant did not file an amended motion within 30 days.

The grounds for relief raised in Defendant's section 2255 motion are as follows:

Ground One:     Ineffective assistance of counsel in the plea process.

Counsel unprofessionally failed to advise Mr. Marker as to all facts and law relevant to his decision to plead guilty.  Had Mr. Marker been fully advised, there is a reasonable probability that he would have pleaded not guilty and proceeded to trial.  But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.

Ground Two:     Ineffective assistance of counsel in the pretrial process.

Counsel unprofessionally failed to timely, properly, and effectively move for suppression of evidence material to the conviction and/or sentence of Mr. Marker and counsel could have but did not timely move for dismissal of the indictment.   But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.

Ground Three:  Ineffective assistance of counsel in the sentencing process.

Counsel could have but did not object to use of the "preponderance of the evidence" standard instead of the "clear and convincing evidence" standard for the dramatic enhancement of Mr. Marker's sentence for uncharged conduct.

Ground Four:   Ineffective assistance of counsel in the
               sentencing process.

Counsel unprofessionally failed to investigate or present
available evidence material to the sentencing of Mr.
Marker.  Counsel also unprofessionally failed to object
to unlawful, false and unreliable evidence used to
determine Mr. Marker's guideline sentencing range and
ultimate sentence.  But for counsel's unprofessional
error, there is a reasonable probability that the outcome
of the proceeding would have been different.

Ground Five:   Ineffective assistance of counsel in the
               sentencing process.

Mr. Marker was prejudiced by the objectively unreasonable
performance of counsel during the sentencing process,
when counsel unprofessionally failed to move for
appropriate downward departure in Mr. Marker's case.  But
for counsel's unprofessional error, there is a reasonable
probability that the outcome of the proceeding would have
been different.

Ground Six:    Ineffective assistance of counsel in the
               sentencing and direct appeal process.

Mr. Marker was prejudiced by the objectively unreasonable
performance of counsel during the sentencing process,
when counsel failed to timely argue that Mr. Marker was
denied Due Process of Law and his Sixth Amendment
constitutional rights to notice and jury trial by the
increase in his sentence by facts not charged in the
indictment, not submitted to a jury, and not proven
beyond a reasonable doubt or admitted by Mr. Marker.  But
for counsel's unprofessional error, there is a reasonable
probability that the outcome of the proceeding would have
been different.

Ground Seven:  Ineffective assistance of counsel in the
               direct appeal process.

Counsel unprofessionally failed to investigate or present
the strongest issues available to Mr. Marker for his
direct appeal and failed to preserve viable issues for
collateral review.  But for counsel's unprofessional
error, there is a reasonable probability that the outcome
of the proceeding would have been different.

7

Ground Eight:   Mr. Marker was denied his Sixth Amendment constitutional right to counsel unburdened by an actual conflict of interest.

Mr. Marker's counsel labored under an actual conflict of interest which adversely affected their performance during the pretrial, sentencing, and direct appeal process in this case. Counsel owed a "duty" other than to Mr. Marker. This duty was in conflict with the duty owed to Mr. Marker. Counsel chose between the duties. This choice adversely affected the performance of counsel during the pretrial, sentencing, and direct appeal process.

Ground Nine:   Ineffective assistance of counsel.

Mr. Marker was prejudiced by the cumulative impact of multiple deficiencies or errors by counsel during the pretrial, sentencing and direct appeal process. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.

Ground Ten:   Mr. Marker was denied his Fifth Amendment constitutional right to due process of law and his Sixth Amendment constitutional right to notice and a jury trial.

Mr. Marker's statutory maximum sentence was increased based upon facts not charged in the indictment, not submitted to a jury, and not proven beyond a reasonable doubt or admitted by Mr. Marker.

Ground Eleven: Mr. Marker was denied his Fifth Amendment constitutional right to due process of law.

The Court lacked knowledge of the available range of sentencing discretion under applicable law due to change in the law effected by <u>Apprendi v. New Jersey</u>, 530 U.S. ___, 147 L. Ed. 2d 435, 120 S. Ct. 2348; 2000 U.S. LEXIS 4304 (6-26-00) and <u>Blakely v. Washington</u>, 2004 U.S. LEXIS 4573 (6-24-04).

(# 119 at 3-5).

Because Defendant's section 2255 motion raised claims implicating the Supreme Court's decision in <u>Blakely</u>, and, consequently, its subsequent decision in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), which applied the holding in <u>Blakely</u> to the United State Sentencing Guidelines, the undersigned held Defendant's motion in abeyance until appellate courts had ruled on the application of those decisions in collateral review proceedings. (# 123).

On October 17, 2005, the Clerk's Office received and filed a document entitled "Petitioner's Supplemental Pleadings," in which Defendant seeks to supplement his section 2255 motion to include a claim that his appellate counsel was ineffective by "not fully briefing the cross reference used, to wit 200 pounds of marijuana, to set base offense level in accordance with U.S.S.G. § 2D1.1(a)(7), at level 26 for 100 kg. but less than 400 kg. of marijuana. PSR at page # 5." (# 127).

Because Defendant is not entitled to any relief on the claims stated in his section 2255 motion or his supplemental pleading, the undersigned has not required the United States to respond to those pleadings.

## **ANALYSIS**

### A.   **Ineffective Assistance of Counsel and Cumulative Error.**

The Supreme Court addressed the right to effective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).   In

9

<u>Strickland</u>, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel.  <u>Id.</u> The first prong is competence; Defendant must show that the representation fell below an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  466 U.S. at 688-89.

In order to meet the first prong, Defendant

must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

460 U.S. at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.  The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice.  466 U.S. 697.  In the context of a

case in which a defendant pled guilty, he must show that he would not have pled guilty but for counsel's incompetence.  Hill v. Lockhart, 474 U.S. 52 (1985); Fields v. Attorney General, 956 F.2d 1290 (4th Cir. 1992).  The undersigned will use this standard in addressing each of Defendant's claims of ineffective assistance of counsel.

      1.   Ground One - Guilty plea process.

In Ground One of his section 2255 motion, Defendant asserts that his retained trial counsel, Peter Mineo and Troy Giatras, failed to advise him of "all facts and law relevant to his decision to plead guilty" and that, had he been fully advised, there is a reasonable probability that he would not have pled guilty.  (# 119 at 3).  Defendant's motion, however, does not identify the specific facts or law he claims would have affected his decision.

In the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the petitioner would not have plead guilty and would have insisted upon going to trial.  See Hill v. Lockhart, 474 U.S. 52 (1985).  Before a guilty plea will be set aside based upon the fact that the defendant was incompetently advised, it must be shown that: (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process, if the case had proceeded to trial; and (3) the guilty plea must have been motivated by the

error.   See United States v. Craig, 985 F.2d 175, 179 (4th Cir. 1993).

During his plea hearing, the following colloquy occurred:

THE COURT:          Tell me in your own words what your part in this crime was.

THE DEFENDANT: I was in possession of the drugs and the guns and I held them.

                              * * *

THE COURT:          And what was your intent insofar as the drugs that you had in your possession? What were you going to do with these drugs?

THE DEFENDANT: I guess I was going to sell them -- I was going to sell them.

THE COURT:          All right.   Did you understand the wrongfulness of your conduct at the time --

THE DEFENDANT: Yes, Your Honor.

                              * * *

THE COURT:          All right, tell me about the possession or carrying or using the firearm in this case.

THE DEFENDANT: Well, I had the firearm in my possession in the same bag as the cocaine.

                              * * *

THE COURT:          Again, did you realize that what you were involved with, that is the drug trafficking and the carrying of guns in relation to that, would be a violation of federal law?

THE DEFENDANT: Yes, Your Honor.

12

* * *

THE COURT:        And have you discussed with Mr. Giatras
                  the sentencing guidelines law and how it
                  might affect your sentence within the
                  mandatory minimum and the maximum under
                  the statutes that I have discussed with
                  you?

THE DEFENDANT: Yes, Your Honor.

THE COURT:        And do you understand generally that the
                  guidelines law provides a formula to the
                  sentencing judge whereby I look to the
                  extent of your involvement in these
                  offenses, both the offense conduct and
                  any relevant conduct, I look to your past
                  criminal history, if there is any, I
                  compare your involvement with that of Mr.
                  Feres and others that might have been
                  involved in the criminal ventures with
                  you, I look to your cooperation or lack
                  of cooperation with the United States and
                  your acceptance or lack of acceptance of
                  responsibility for your criminal conduct
                  among other factors?

THE DEFENDANT: Yes, Your Honor.

* * *

THE COURT:        Do you understand that so long as I would
                  impose a sentence within the mandatory
                  minimum and the maximum under the statute
                  and as allowable by the sentencing
                  guidelines law, that such a sentence
                  would be a lawful sentence and even if
                  you did not like the length of that
                  sentence, that would not give you a basis
                  to then withdraw your pleas and claim a
                  right to a trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT:        And knowing all these things, are you
                  prepared to go forward with written pleas
                  of guilty to these two charges today?

13

THE DEFENDANT: Yes, Your Honor.

* * *

THE COURT:        And before reaching that decision do you
                  think you have had an adequate amount of
                  time to discuss all aspects of your case
                  with Mr. Giatras?

THE DEFENDANT: Yes, Your Honor.

THE COURT:        Has he been able to answer the questions
                  you have had about the best way to
                  proceed under the circumstances?

THE DEFENDANT: Yes, Your Honor.

THE COURT:        Are you satisfied with the quality of his
                  legal services to this point, knowing
                  that he is representing you in serious
                  criminal matters?

THE DEFENDANT: Yes, Your Honor.

(# 102 at 20-23).  Upon questioning from the district court, Mr.

Giatras indicated that he believed that there was no meritorious

defense to the charges, and that Defendant's constitutional and

other rights had been fully observed.  (Id. at 23).

     Defendant has not identified any specific facts or law that he

claims his counsel failed to advise him of, or how such advice

would have substantially affected the fact-finding process and

altered his motivation to plead guilty.  Consequently, the court

cannot find that either or both of Defendant's counsel acted

incompetently.  Therefore, the undersigned proposes that the

presiding District Judge **FIND** that Defendant has not demonstrated

that his trial counsel provided ineffective assistance of counsel

on this basis, and that he is entitled to no collateral relief on this claim.

> 2. Ground Two - Failure to move for suppression of evidence and dismissal of indictment.

In Ground Two of his section 2255 motion, Defendant asserts that his trial counsel failed to "timely, properly, and effectively move for suppression of evidence material to the conviction and/or sentence" and "counsel could have but did not timely move for dismissal of the indictment." (# 119 at 3-4). Once again, Defendant has not identified any specific evidence that he believes should have been suppressed, any basis for suppression of such evidence, or any basis for dismissal of the indictment.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that his trial counsel's conduct fell below an objective standard of reasonableness and, therefore, Defendant is not entitled to any collateral relief on this claim.

> 3. Ground Four - Failure to investigate or present evidence material to sentencing.

In Ground Four of his section 2255 motion, Defendant asserts that his trial counsel "failed to investigate and present evidence material to his sentencing," and "failed to object to unlawful, false, and unreliable evidence used to determine Defendant's guideline sentencing range and ultimate sentence." (# 119 at 4). An allegation that an attorney conducted an inadequate

investigation does not warrant relief absent a proffer of the specific favorable evidence the investigation would have brought out.  See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1991).  Furthermore, the reasonableness of an investigation made by counsel must be evaluated under the totality of the circumstances facing the attorney.  See Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991).

In the instant case, Defendant has neither identified specific evidence that he believes his trial counsel failed to investigate or present, nor identified any evidence he believes to have been unreliable or false.  There is no evidence in the record to demonstrate that Defendant's trial counsel's investigation was unreasonable under the circumstances.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that his trial counsel was constitutionally ineffective on this basis, and that Defendant is entitled to no collateral relief on this claim.

> 4.   Ground Five - Failure to move for downward departure.

In Ground Five of his section 2255 motion, Defendant asserts that his trial counsel failed to move for an appropriate downward departure at sentencing.  (# 119 at 4).  However, Defendant has not stated any basis upon which the request for downward departure should have been made.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not

demonstrated that his trial counsel was constitutionally ineffective on this basis and that Defendant is entitled to no collateral relief on this claim.

> 5.   Ground Seven - Failure to present strongest issues on appeal.

In Ground Seven of his section 2255 motion, Defendant asserts that his appellate counsel, Matthew Victor, "failed to investigate or present the strongest issues available to Mr. Marker for his direct appeal, and failed to preserve viable issues for collateral review." (# 119 at 4-5). In the motion, Defendant has not specified any particular issues he believes should have been addressed in his appeal or what "viable" issues were not preserved for collateral review. However, in Defendant's Supplemental Pleading (# 127), Defendant asserts that his appellate counsel was ineffective "for not fully briefing the cross reference used, to wit 200 pounds of marijuana, to set base offense level in accordance with U.S.S.G. § 2D1.1(a)(7), at level 26 for 100 kg. but less than 400 kg. of marijuana. PSR at page # 5." The undersigned will treat this as support for Defendant's claim that his appellate counsel was constitutionally ineffective.

Essentially, Defendant is asserting that Mr. Victor provided ineffective assistance of counsel because he failed to challenge the attribution of the 200 pounds of marijuana as relevant conduct in the calculation of Defendant's sentence. Defendant's trial counsel objected to the inclusion of the marijuana as relevant

conduct at Defendant's sentencing.   Thus, the issue was preserved for appeal.

At sentencing, Mr. Mineo cited to the Fourth Circuit's rulings in United States v. Gilliam, 987 F.2d 1009 (4th Cir. 1993) and United States v. Falesbork, 5 F.3d 715 (4th Cir. 1993) in support of Defendant's objection.   In Gilliam, the Fourth Circuit vacated the defendant's sentence and remanded the case to the district court on the basis that the court improperly attributed 30 kilograms of cocaine to the defendant as relevant conduct.

The defendant in Gilliam had been charged in two separate indictments alleging drug conspiracies.   One indictment (the Castrillon indictment) charged that 28 individuals were involved in a conspiracy to distribute 30 kilograms or more of cocaine over the course of three years.   The second indictment (the Greear indictment) charged Gilliam in a conspiracy involving more than 500 grams of cocaine.   The Castrillon indictment also contained counts charging certain individuals with acts involving specific quantities of cocaine.   Gilliam, however, was not charged with any specific drug amounts in that indictment.

Gilliam pled guilty to both conspiracy counts, and his convictions were grouped together for sentencing.   At his sentencing, without hearing any evidence about the drug quantity, the district court attributed 30 kilograms, as pled in the Castrillon indictment, to Gilliam.   During the sentencing hearing,

18

Gilliam admitted that he had purchased approximately 855 grams of cocaine as part of the Greear conspiracy, but denied involvement in the Castrillon conspiracy, stating that he had pled guilty to that count simply because the plea agreement required that he plead to both conspiracies. Id. at 1012. The Fourth Circuit found that there was insufficient evidence on which to make an independent determination of the drug quantities attributable to Gilliam.

In Falesbork, the district court imposed a two-level enhancement for possession of a firearm to the sentence of defendant Lindsey. The firearm had been used in a drug-related murder in which Lindsey did not actually participate, but for which he had paid the assailant. The district court found as follows:

> My findings of fact are that Tyrone Boone was robbed in the course of a drug transaction which was part of the overall scheme involved in which the defendant here had been indicted, and I find that the defendant and Tyrone Boone were partners, and that from that I can infer that the defendant himself had some interest, direct or indirect, in the drugs which were taken from Tyrone Boone.

On appeal, Lindsey argued that the facts were insufficient to support the two-level enhancement of Lindsey's sentence. 5 F.3d at 719. The Fourth Circuit affirmed the sentence, finding as follows:

> Two factors in combination render this enhancement initially somewhat troublesome and mark it as lying near the outer edges of the conduct that may be attributed to a defendant for sentencing purposes: (1) the fact that the gun in question was physically used by a third party, not directly by the defendant, and (2) the temporal remoteness of the defendant's contact with the gun from his crime of conviction. While the enhancement imposed may lie near that boundary, however, it does not cross

it.

Id. at 719-720.

Based upon these rulings, at Defendant's sentencing, Mr. Mineo argued that the alleged sale of the marijuana by Defendant to Headden in December of 2001 and the Defendant's offense of conviction for possession of cocaine and firearms were temporally remote and unrelated.  (# 47-52).

In response, the government asserted that the offense of conviction was part of an attempt to collect on the debt owed by Headden to Defendant for the 200 pounds of marijuana and, thus, was part of a common scheme or plan, or the same course of conduct, as described in Note 9 of the commentary to USSG § 1B1.3 concerning relevant conduct.  Therefore, the government asserted that the inclusion of the 200 pounds of marijuana as relevant conduct was appropriate.  (Id. at 54-55).  Assistant United States Attorney Travis Gery asserted:

> However, I would argue that this is still -- this still falls within the gambit of what is considered relevant conduct under the common scheme or plan or perhaps the same course of conduct because when you look at the whole factual scenario, it seems clear from the evidence that the only thing that brought these defendants to Charleston, West Virginia with the cocaine was this original sale of 2 hundred pounds of marijuana.
>
> It seems clear that everything that unfolded from North Carolina up to their arrest here centered on that sale because the whole purpose of their being together and coming here was to collect a debt from that sale.

20

       So even though temporally there may be a longer than
normal break in the events and we're talking about
different substances, seems to me, and I would argue to
the Court, that this is part of this because that was in
essence the entire plan or scheme, collection of that
drug debt.  So I would argue that it is appropriate to
consider the 2 hundred pounds as relevant conduct.

(Id.)

In Gilliam, the Fourth Circuit pointed out that, under the

Guidelines, "relevant conduct shall be determined on the basis of

'all acts and omissions committed or aided and abetted by the

defendant, or for which the defendant would be otherwise

accountable, that occurred during the commission of the offense of

conviction." 987 F.2d at 1012; U.S.S.G. § 1B1.3(a)(1).  The court

in Gilliam further stated:

       When the amount of drugs for which a defendant is to
be held responsible is disputed, the district court must
make an independent resolution of the factual issue at
sentencing. *See* U.S.S.G. § 6A1.3(b).  The Government
bears the burden of proving by a preponderance of the
evidence the quantity of drugs for which a defendant
should be held accountable at sentencing (citation
omitted).

987 F.2d at 1013.

In the instant case, the government presented the testimony of

Nicolas Headden concerning the prior drug transaction and the debt

still owed, and the journey from North Carolina to Charleston.  (#

99 at 7-43).  Headden testified that he and/or his brother had been

involved in the purchase of 200 pounds of marijuana from Defendant

in December of 2001, that money was still owed for that purchase,

and that Defendant had brought Headden to Charleston to obtain

money from his brother's girlfriend in order to collect on the debt.  (<u>Id.</u> at 19-21).  The district court credited Headden's testimony and ruled that the marijuana was attributable to Defendant as relevant conduct.  Specifically, the court found:

> I do overrule the objection on [the marijuana] and believe that it should be counted as relevant conduct, and I believe the government counsel makes it clear that it is a direct link or part of the basis of the criminal activity that took place in the Southern District of West Virginia because it was that New York sale, and perhaps others, that first worked out to a drug debt of somewhere around 127 thousand dollars as is set forth in the presentence report and then was, after payments made by Mr. Headden, reduced to approximately 80 thousand dollars.  But it is directly connected; it is part of that common course and conduct.  And I conclude from the evidence that I heard this morning, which I do not revisit, that the purpose of that venture up 77 with the stop in Charleston was to collect the drug debt or additional proceeds to liquidate that drug debt, part of which was represented by that 2 hundred pound sale of marijuana in December of 2001.
>
> So I do believe it is relevant conduct, I do convert that with equivalency to reach 147.52 kilograms of marijuana equivalency as the probation officer has done.

(<u>Id.</u> at 56-57).

The district court made an independent resolution of the factual issue at sentencing.  Defendant's case is distinguishable from <u>Gilliam</u>, in which the court vacated and remanded on the basis that there was no supporting evidence upon which to make an independent resolution concerning the disputed drug quantity. Furthermore, there is a more direct connection between the marijuana Defendant sold to Headden and Defendant's arrest in the Southern District of West Virginia while trying to collect the debt

22

owed for that marijuana than there was for the gun enhancement attributed to Lindsey in <u>Falesbork</u>. The Fourth Circuit affirmed the district court's relevant conduct finding in <u>Falesbork</u>. Thus, there is no reasonable basis to believe that the Fourth Circuit would have reversed the district court's relevant conduct finding here, had Mr. Victor, an experienced criminal defense attorney, challenged it on appeal.

Defendant has not demonstrated that the attribution of the 200 pounds of marijuana as relevant conduct was either factually or legally improper. Defendant has pointed to no case law whatsoever that would support a reasonable probability that such a finding would have been reversed on appeal.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that his appellate counsel provided ineffective assistance during the appeal process.

6. Ground Eight - Conflict of interest.

In Ground Eight of his section 2255 motion, Defendant asserts that his "counsel labored under an actual conflict of interest which adversely affected their performance during the pretrial, sentencing, and direct appeal process in this case." (# 119 at 5). Defendant further asserts that "Counsel owed a 'duty' other than to Mr. Marker. This duty was in conflict with the duty owed to Mr. Marker. Counsel chose between the duties. This choice adversely

23

affected the performance of counsel during the pretrial, sentencing, and direct appeal process." (Id.)

Defendant was represented by retained counsel, Peter Mineo, with Troy Giatras serving as local counsel, during the pre-trial, plea, and sentencing stages of the case. On appeal, Defendant was represented by appointed counsel, Matthew Victor. Defendant has not identified which of his counsel he claims had a conflict of interest, or what the actual conflict was.

An exception to the Strickland standard for determination of whether a defendant has been denied effective assistance of counsel is where a defendant's attorney actively represented conflicting interests. Absent objection, however, a defendant must demonstrate that a conflict of interest actually affected the adequacy of his representation. See Holloway v. Arkansas, 435 U.S. 475 (1978); Cuyler v. Sullivan, 446 U.S. 335, 348-49 (1980); Wood v. Georgia, 450 U.S. 261, 273 (1981).

Here, Petitioner has failed to show an actual conflict of interest in his counsel's representation, or that such representation adversely affected the outcome of his trial. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that any of his counsel labored under an actual conflict of interest that affected the adequacy of the defense provided to Defendant, and that Defendant is entitled to no collateral relief on this claim.

24

**B.    Booker-based claims.**

On January 12, 2005, the Supreme Court decided <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), which reaffirmed the Court's holding in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), applied holding in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) to the Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756. The <u>Booker</u> holding applies "'to all cases on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" 125 S. Ct. at 769 (quoting <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328 (1987)). Defendant's case has concluded direct review and is final. Thus <u>Booker</u> does not apply, unless the Supreme Court rules that it is to be applied retroactively to cases on collateral review.

On November 7, 2005, the United States Court of Appeals for the Fourth Circuit held:

> The rule announced in <u>Booker</u> is a new rule of criminal procedure, but it is not a watershed rule. Accordingly, the rule is not available for post-conviction relief for federal prisoners, like Morris, whose convictions became final before <u>Booker</u> (or <u>Blakely</u>) was decided.

<u>United States v. Morris</u>, 429 F.3d 65, 72 (4th Cir. 2005).

Nine other Circuit Courts of Appeals previously reached the same conclusion and ruled that <u>Booker</u> does not apply retroactively to cases on collateral review.  <u>See</u> <u>United States v. Cruz</u>, 423 F.3d 1119 (9th Cir. 2005); <u>Padilla v. United States</u>, 416 F.3d 424 (5th Cir. 2005)(per curiam); <u>Never Misses A Shot v. United States</u>, 413 F.3d 781 (8th Cir. 2005)(per curiam); <u>United States v. Bellamy</u>, 411 F.3d 1182 (10th Cir. 2005); <u>Lloyd v. United States</u>, 407 F.3d 608 (3rd Cir.), <u>cert. denied</u>, 126 S. Ct. 288 (2005); <u>Guzman v. United States</u>, 404 F.3d 139 (2nd Cir.), <u>cert. denied</u>, 126 S. Ct. 731 (2005); <u>Humphress v. United States</u>, 398 F.3d 855 (6th Cir.), <u>cert. denied</u>, 126 S. Ct. 199 (2005); <u>Varela v. United States</u>, 400 F.3d 864 (11th Cir.)(per curiam), <u>cert. denied</u>, 126 S. Ct. 312 (2005); <u>McReynolds v. United States</u>, 397 F.3d 479 (7th Cir.), <u>cert. denied</u>, 125 S. Ct. 2559 (2005).  Not one circuit court of appeals has decided that <u>Blakely</u> or <u>Booker</u> applies retroactively on collateral review.

Based on <u>Morris</u>, and the other decisions rendered by circuit courts of appeals reaching the same conclusion, the undersigned proposes that the presiding District Judge **FIND** that Defendant's conviction was final before <u>Blakely</u> and <u>Booker</u> were decided, and that neither <u>Blakely</u> nor <u>Booker</u> applies retroactively on collateral review.

The claims stated in Grounds Three, Six, Ten, and Eleven of Defendant's section 2255 motion are all driven by the <u>Blakely</u> and

Booker decisions.   In Ground Ten, Defendant asserts that he was denied his Fifth Amendment right to due process and his Sixth Amendment right to notice and a jury trial because the district court enhanced his sentence based upon facts not charged in the indictment, and not proven beyond a reasonable doubt to a jury, or admitted by Defendant.

In Ground Eleven, Defendant asserts that he was denied his Fifth Amendment right to due process because the district court "lacked knowledge of the available range of discretion" it had to sentence Defendant in light of the Blakely ruling.   In Defendant's Supplemental Pleading, Defendant further asserts that the district court "abused its discretion in enhancing [Defendant's] sentence based upon alleged conduct that is not related to the instant offense of conviction as required by law."   (# 127 at 1).   In essence, Defendant is challenging the district court's inclusion of 200 pounds of marijuana as relevant conduct on the basis that "the 200 pounds of marijuana is not related to the offense of conviction."   (Id. at 2).   The undersigned finds this to be an extension of Defendant's claim in Ground Eleven.

Because Defendant's judgment was final before the Blakely and Booker rulings, those rulings have no application to Defendant's case.   Defendant was properly sentenced under the law at the time of his sentencing.   Thus, the undersigned proposes that the presiding District Judge **FIND** that Defendant is entitled to no

collateral relief on these claims.

In Grounds Three and Six of his section 2255 motion, Defendant asserts that his trial and appellate counsel provided ineffective assistance of counsel because they did not object to or raise a claim of error concerning the use of a preponderance of the evidence standard to enhance Defendant's sentence based upon uncharged conduct, which Defendant claims resulted in the denial of his Fifth Amendment right to due process and his Sixth Amendment right to notice and a jury trial.

As stated above, Defendant is not entitled to the benefit of collateral relief for his claimed violations of his Fifth and Sixth Amendment rights based upon the rulings in <u>Blakely</u> and <u>Booker</u>. Defendant was sentenced and filed his appeal in December of 2002, and year and a half before <u>Blakely</u> was decided, and two years before <u>Booker</u>.   It is not reasonable to expect an attorney to anticipate a Supreme Court ruling years in advance.   Therefore, Defendant has not demonstrated that his counsel's performance fell below an objective standard of reasonableness.   Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant is entitled to no collateral relief on Grounds Three and Six of his section 2255 motion.

### C.   Cumulative Error.

In Ground Nine of his section 2255 motion, Defendant asserts that he "was prejudiced by the cumulative impact of multiple

28

deficiencies or errors by counsel during the pretrial, sentencing and direct appeal process." (# 119 at 5).  In <u>Fisher v. Angelone</u>, 163 F.3d 835, 852 (4th Cir. 1998), the Fourth Circuit held that "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error . . . ." Thus, in order for a cumulative error analysis to apply, the court must first find that there have been actual constitutional errors.

Defendant's claim of cumulative error does not identify the particular individual errors that he alleges form the basis of this claim.  Because the court has already found that Defendant has not demonstrated any violations of his constitutional rights based on the other claims contained in his section 2255 motion, to the extent that Defendant raises (as a basis for cumulative error) claims already addressed by the court, those claims lack merit as well.

The undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that he was denied a fair and impartial trial based on the cumulative effect of any alleged errors asserted in his section 2255 motion, and is not entitled to collateral relief on this basis.

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's section 2255 motion (# 119) and **DENY AS MOOT** Defendant's Motion to Amend his section 2255 motion (# 118).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, Brandon Marker, and to counsel of record.

February 7, 2006
Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge